Shirley R. Levittan, J.
The issue now ruled on is narrow and ad hoc. It is whether on the prospective hearing of the particular motion to be held pursuant to CPL 210.40 (subd 1) to dismiss the indictment or one count of it in furtherance of justice, on the ground that dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstances demonstrating that conviction or prosecution of the defendant would constitute or result in injustice, colloquially labeled a "Clayton hearing,” (People v Clayton, 41 AD2d 204), the court is prohibited from granting a preliminary application by the accused that the court receive in evidence on the Clayton hearing testimony of the results of a polygraph examination to which the accused submitted, on his own initiative, and testimony of a second such test by another polygrapher, also procured on the defendant’s initiative but on notice to the People and by a polygrapher whose *473 credentials are unassailed by the People (Richard O. Arther, Editor of Journal of Polygraph Studies).
Equally significant are the issues not adjudged on this ruling: whether the accused is guilty or not; whether such polygraph evidence is admissible on a trial, by jury or court, by consent or over objection, by either party; whether such evidence is admissible in Clayton hearings on offer of the People over the defendant’s objection; or whether the Clayton motion to dismiss the indictment or count should be granted or denied.
The defendant justifies the reception of the evidence under the second of the discretionary criteria enumerated in Clayton, namely, "available evidence of guilt,” where, he argues, the only truly reliable evidence of guilt in the case at bar is circumstantial but not insufficient to sustain conviction, inviting a practical need to prove a negative; this the defendant is helpless in this action to attempt because of a self-inflicted but nonetheless effective incapacity. The negative is that he did not possess a weapon (Penal Law, § 265.02), which was found beside him; the circumstantial evidence is that it was there; and his disability to adduce facts affirmatively disproving his possession arises from the fact that he was incapacitated by intoxication.
The court was made aware (by both sides) that the defendant was arrested in a tavern when two police officers entered, responding to a report (later found unsubstantiated) of a shooting. Dining booths, partitioned by plexiglass enclosures, lined a wall, and the defendant was seated in one with his head slumped on the table, cupped in his folded forearms, in an alcoholic stupor. One officer, it appears, believes and will testify that he saw the defendant conspicuously and with deliberation remove a revolver from his pocket, transport it in a sinuous mid-air arc to the right, and carefully drop it between the seat of the booth and the wall. The vitality of this evidence, it is to appear, will be diluted by the failure of the officer’s partner, who immediately preceded him, to observe the revolver on the defendant’s person or in transit, or to see anything more than a vague movement lacking probative force. But it appears that the revolver was there between booth and wall; and this circumstantial evidence is to be the only substantial proof bearing probative value. Although the offense would otherwise be a misdemeanor, the defendant is a predicate felon.
*474 The defendant’s position is that where his disability prevents him from disproving the only substantially probative available evidence of guilt, which is circumstantial, the opportunity to avoid injustice if he is innocent need not be sacrificed, when, in addition to that situation, some extraneous compelling factor, consideration or circumstance demonstrates that conviction or prosecution would result in injustice (CPL 210.40, subd 1). Responding to that call, another Judge of this court directed a Clayton hearing. The accused now argues that before the court, upon such hearing, determines the question whether the extraneous compelling factor, consideration or circumstance exists, it ought first be persuaded that conviction would result in injustice. As to such injustice, innocence is not extraneous. Conviction of an innocent person is an injustice. Such innocence, argues the defendant, ought to be demonstrable by whatever means, independently of the extraneous factors. Differently stated, the defendant’s argument is that there are two elements to the issue as applicable to his fact situation: the compelling factor, consideration or circumstance, to which guilt or innocence is concededly irrelevant, and the injustice resulting from conviction or prosecution. As to the latter element, as distinguished from the former, the issue is whether the only relevant injustice is that demonstrated by the extraneous factors, and whether evidence of innocence is necessarily irrelevant. The defendant argues that where he, in fact, has the means to persuade the court on a Clayton hearing as distinguished from a trial, that injustice would result, the court should not anaesthetize itself to such persuasion, even though it be by means impermissible on a trial — and, perhaps even more so because it is unavailable on the trial. (People v Leone, 25 NY2d 511; People v Forte, 279 NY 204; Pereira v Pereira, 35 NY2d 301.) Obviously, he offers the results of the two tests, because they are both persuasive of his innocence.
The People argue that the polygraph evidence should be excluded because the Clayton motion is in the nature of a demurrer, and evidence of innocence is, therefore, irrelevant, and because governing authority in New York State holds that polygraphy is too unreliable for use by either party on a trial, wherefrom it follows that it is too unreliable for any other purpose. The court is aware, also, of argument that since a defendant cannot be compelled to submit to polygraphy, it is unfair to allow him to use it when he would be advantaged.
*475 As to the argument that the motion is in the nature of a demurrer, historical prohibition strictly forbidding the supplementation of demurrer with evidence, has retreated to more flexible procedure. Even in civil practice, the supplementation is explicitly now authorized (CPLR 3211, subd [c]). Moreover, in the motion before the court, there are two elements, one of which, namely, the compelling factor, consideration or circumstance, is in nature of a demurrer, but the other one of which, namely, injustice resulting from conviction or prosecution, does not rigidly require hypothetical assumption of guilt, nor obligate the court to desensitize itself to the possibility of innocence.
As to the argument that binding New York precedent holds polygraphy unreliable for trial purposes, and, a priori or a fortiori, unreliable for any probative purpose whatsoever, I do not find the Court of Appeals decisions to go so far. While one court of nisi prius jurisdiction co-ordinate with this court did so remark, it was en passant and en route to a finding of other grounds for discretionary dismissal which did take into account the possibility of innocence; and that court was impressed by the extent of the defendant’s efforts to exonerate himself, including an offer of voluntary polygraphy (People v Hargrove, 80 Misc 2d 317). However, the majority, concurring and dissenting opinions of the Court of Appeals Judges rendered just about a month prior to the hearing of this preliminary application in People v Belge (41 NY2d 60) illustrate the disparity of purpose between a trial on the merits and a discretionary dismissal in the interest of justice under CPL 210.40 (subd 1). Disparity of purpose is not well served by unyielding uniformity of evidentiary limitations. A different destination may commend a different road. Here the issue is whether before the court considers if some compelling factor, consideration or circumstance extraneous to guilt or innocence exists, the court is limited to such factor in finding that there would be an injustice in the event of conviction, upon which to predicate discretionary dismissal.
In exercising the "residuum of inherent discretion to act in the unusual case that cries out for fundamental justice beyond the confines of conventional considerations of legal or factual merits of the charge or even on the guilt or innocence of the defendant’ ” (People v Belge, supra, pp 62-63 [concurring opn]) and in its grasp for recognition of injustice upon which to *476 predicate discretionary dismissal, the court is liberated from consideration of innocence, but not quarantined from it.
Use of polygraphy is controversial and its arguments widely disseminated in legal literature and professional bibliography. The state of its art is not static. We are not here required to re-evaluate its reliability for any but the narrow ad hoc purpose of the specific application sub judice. For that confined use the court examined such literature (see, e.g., Validity and Reliability of Detection of Deception, Final Report [Contract 75-NI 99-0001, National Institute of Law Enforcement and Criminal Justice, Law Enforcement Assistance Administration, US Dept of Justice, Aug 30, 1976], which indicates that if the recommended conditions are met, an accuracy rate of approximately 90% may be expected). Indeed, amongst the plentiful literature, the court was seriously and favorably impressed by the scholarship of the senior polygraphic expert of the office of the District Attorney of New York County, its own Natale Laurendi, who it justifiably regards as one of the nation’s foremost polygraphers (see, e.g., Laurendi, Memory and Lie Detection: Some Unresolved Aspects and Troublesome Cases, Journal Amer Polygraphic Inst). The District Attorney uses Mr. Laurendi for the same function it would deny to this court. Indeed, the court has been given to understand that Mr. Laurendi will be at counsel table with the Assistant District Attorney at the Clayton hearing, if polygraph evidence is allowed.
As to the view that since a defendant cannot be compelled to submit to polygraphy, it is unfair to allow him to use it when he is advantaged and to impose it on the People, it has not been an invariable principle of our criminal jurisprudence that every evidentiary right of or restriction upon one party must be matched by a symmetrical right of or restriction upon the other party. On its ascent from the tyrannies of its antecedents, our criminar justice system has ordained disparities in the rights and burdens of accuser and accused. Thus, by way of illustration, while a defendant is entitled to be confronted with the witnesses against him and to cross-exam-inc them, he is privileged to remain mute himself. Avoidance of injustice enjoys — and must enjoy — higher priority than achievement of criminal justice.
This court in the proceeding before it, where apparently the probative evidence of guilt is essentially circumstantial and the defendant is without means to contravene it, does not find *477 itself restrained from auditing the factual and expert testimony of the polygraphers produced by the People, subject to cross-examination by the People and production of their own experts if they desire.
The preliminary application for reception of such testimony is granted. Such ruling is no indication of the outcome of the motion for dismissal itself.